BERMAN O'CONNOR & MANN
Suite 503, Bank of Guam Bldg.
111 Chalan Santo Papa
Hagatna, Guam 96910
Telephone No.: (671) 477-2778
Facsimile No.: (671) 477-4366

Attorneys for Plaintiff:
*H.B.B.*

## IN THE UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| H.B.B., | CIVIL ACTION NO. _____ |
| Plaintiff, | |
| vs. | **VERIFIED COMPLAINT FOR DAMAGES FOR:** |
| CAPUCHIN FRANCISCANS; CAPUCHIN FRANCISCANS, PROVINCE OF ST. MARY; CAPUCHIN FRANCISCANS CUSTODY OF STAR OF THE SEA; DOE ENTITIES 1-5; and DOE-INDIVIDUALS 6-50, inclusive, | 1. Negligence<br>2. Negligent Supervision<br>3. Negligent Hiring and Retention<br>4. Breach of Fiduciary Duty / Confidential Relationship |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff H.B.B. ("H.B.B.") files this Complaint for damages based on prior sexual abuse (the "Complaint") against Defendants Capuchin Franciscans, Capuchin Franciscans Province of St. Mary, Capuchin Franciscans Custody of Star of the Sea and DOES 1-50 ("Defendants").

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

2. Venue is appropriate because this is the location in which a substantial part of the events or omissions giving rise to the claim occurred.

### II. PARTIES

3. At all times relevant hereto, H.B.B. has been and is an individual who attended Church at the Talofofo Parish, Guam, during her childhood years. When she was a minor girl, H.B.B. was sexually abused by Father Herbert Francis "Fulgence"

Petrie ("Petrie"), an ordained Capuchin missionary priest of the Roman Catholic Archbishop of Agana. H.B.B. is currently 68 years old. Plaintiff H.B.B. is identified throughout this complaint by her initials in order to protect her privacy.

4. At all times relevant hereto, and upon information and belief, Roman Catholic Archbishop of Agana, a corporation sole, in accordance with the discipline and government of the Roman Catholic Church, is the legal name for the Archbishop of Agana, also known as Archdiocese of Agana. ("Agana Archdiocese"), which is and has been at all time relevant hereto a non-profit corporation organized and existing under the laws of Guam, authorized to conduct business and conducting business in Guam, with its principal place of business in Guam. The Agana Archdiocese is an entity under the control of the Holy See, based in Vatican City, Rome, Italy. The Agana Archdiocese filed for Chapter 11 Bankruptcy in the Guam District Court in BK Case No. 19-00010. Plaintiff will pursue her claims against the Agana Archdiocese strictly within the Bankruptcy proceeding.

5. At all times material hereto, defendants Capuchin Franciscans and Capuchin Franciscans, Province of St. Mary, were a religious order of priests who served various Catholic positions throughout the United States, including positions in Guam. The Capuchin Franciscans in the United States are divided into geographic areas of provinces, and the defendant Capuchin Franciscans, Province of St. Mary, is one of those geographic area.

6. Upon information and belief, the Capuchin Franciscans had authority and control over the Capuchin Franciscans, Province of St. Mary, including the operations of the Missionary Diocese of Guam.

7. On or about 1982, the Capuchin Franciscans established the Guam community as the Star of the Sea, a Vice Province of the Capuchin Franciscans Province of St. Mary. Upon information and belief, the Capuchin Franciscans had control over both the Capuchin Franciscan Province of St. Mary and Capuchin

Franciscans Vice Province Custody of Star of the Sea (hereafter collectively referred to as the "Capuchins"). The Capuchins are responsible and liable in whole or in part, directly or indirectly, for the wrongful acts complained of herein.

8. At all times relevant hereto, Petrie, an individual and an agent of the Agana Archdiocese, was a member of the clergy of the Agana Archdiocese, and a Capuchin Catholic priest working for the Agana Archdiocese. Petrie was ordained as a Catholic Priest in 1948. He was a Capuchin for 35 years and he served as a Capuchin on Guam for 25 years, where he worked in parishes and schools until 1974. On or about September 14, 1974, Petrie died at the age of 52. If not deceased, Petrie would have been individually liable, in whole or in part, directly or indirectly, for the wrongful acts complained of herein.

9. Defendant-entities named herein as DOES 1-5, inclusive, are or at all times relevant hereto, were insurance companies that provided general liability coverage and/or excess level liability coverage pursuant to policies issued to the Agana Archdiocese and/or Roman Catholic Church of Guam, the Capuchin Franciscans, and/or the Capuchin Franciscans Province of St. Mary. Defendant-individuals named here-in as DOES 6-50, inclusive, and at all times relevant hereto, were agents, employees, representatives and/or affiliated entities of the Agana Archdiocese and/or Roman Catholic Church, whose true names and capacities are unknown to H.B.B. who therefore sues such defendants by such fictitious names, and who will amend the Complaint to show the true names and capacities of each such DOE defendant when ascertained. DOES 6-50 assisted, aided and abetted and/or conspired with Petrie, the Capuchin Franciscans, and/or the Capuchin Franciscans Province of St. Mary, to conceal, disguise, cover up, and/or promote the wrongful acts complained of herein. As such, each such DOE is legally responsible in some manner for the events, happenings, and/or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

10. Each Defendant is the agent, servant and/or employee of other Defendants, and each Defendant was acting within the course and scope of his, her or its authority as an agent, servant and/or employee of the other Defendants. Defendants, and each of them, are individuals, corporations, alter egos and partnerships of each other and other entities which engaged in, joined in and conspired with the other wrongdoers in carrying out the tortious and unlawful activities described in this Complaint; and defendants, each of them, ratified the acts of the other defendants as described in this Complaint.

### III. INTRODUCTORY ALLEGATIONS

#### A. Culture of Sexually Predatory Behavior

11. Since the inception of the priesthood many centuries ago, becoming a Catholic priest has required numerous vows to be taken among them a vow of celibacy, obedience to the laws of both God and society, and a variety of responsibilities that elevated priests, nuns, and entities that utilized the services of priests and nuns, to a high status in the community, which induced parents to entrust their children to the care of priests and likewise induced children to submit to the commands and will of priests.

12. The creation of the ritual of young underage girls being asked to clean the churches as a component of the Catholic mass and other religious services with the Catholic Church, if not originally conceived as such, ultimately became a tool by which a sexually predatory priest could gain access to young girls and such access was disguised in the form of privileged opportunities by which the church invited certain young girls to clean the churches, an opportunity that was viewed as a respectable and distinguished role for a young girl in the community gave the girl status of assisting the priests with their daily needs.

13. The systematic and ongoing pattern of sexual abuse of young children was characteristic of an internal society within the Agana Archdiocese and whose norms were based on pedophilic conduct disguised by the rituals and pageantry of liturgical services, together with the aura or prestige that was inculcated in the community and which caused Catholic parishioners to place the highest level of confidence and trust in the church and its clergy. On information and belief, this internal society of sexual corruption sustained itself through a conspiratorial arrangement between priests and high officials in the Agana Archdiocese whereby they all understood and agreed to remain quiet about each others sexual abuse misconduct, to tolerate such misconduct, and to withhold information about such misconduct from third parties including victims' parents or guardians and law enforcements authorities, in order to protect the offenders and the Agana Archdiocese, thereby placing their loyalty above their duty to protect the minor children and their legal responsibilities.

14. On information and belief, these sexually predatory norms were an integral part of the standards and culture generated by the central authority of the Roman Catholic Church based in Vatican City, Italy, which closely controlled the operations of the Agana Archdiocese, and which aided and abetted such sexually predatory and abusive practices by priests by failing to properly supervise the Agana Archdiocese to prevent sexual misconduct, and engaging in actions to protect and shield priests through such policies as transfers to other jurisdictions, maintaining an internal code of silence, and choosing to remain willfully blind to the ongoing sexual misconduct committed by Catholic priests.

B. **The Hiring and Retention of Petrie**

15. Petrie was born at Mount Calvary, Wisconsin, on July 7, 1922.

16. He graduated from the St. Lawrence Seminary High School. He received his college education at St. Mary's college at Garrison, N.Y., and theology at St.

Anthony's Seminary at Marathon, Wisconsin. He was ordained as a priest in 1948 at Marathon.

17. Petrie underwent a year of training for an education degree at the University of Notre Dame, South Bend, Indiana. He was a Capuchin for 35 years and he was a Capuchin missionary on Guam for 25 years.

18. As a result of Petrie being a Capuchin priest, the Capuchins are jointly and severally liable with the other Defendants for the abuse committed by Petrie during his time on Guam.

C. **Sexual Abuse Inflicted on Plaintiff H.B.B.**

19. In or around 1963, around the ages of twelve (12) to thirteen (13), H.B.B. attended Church at the Talofofo Parish. During this time, Petrie was a Capuchin priest, and was also an employee, volunteer, and/or agent of the Capuchins.

20. During the period in which she attended church in Talofofo, H.B.B. was sexually abused by Petrie, on church grounds.

21. Plaintiff H.B.B. cleaned Petrie's house on Saturday's. Petrie's house was called the Conbento and it was located on church grounds and adjacent to the Talofofo Catholic church. Petrie was the parish priest for the Talofofo Parish at that time.

22. On one occasion, while Plaintiff H.B.B. was cleaning Petrie's house on a Saturday, Petrie picked up H.B.B. from behind and sat her on his lap. Petrie then placed his hand under H.B.B.'s panty and he then touched her private parts. Petrie then looked out through the louvers and he saw a group of people outside. He then got up and told H.B.B. to leave his house.

23. Upon information and belief, other priests and representatives of the Agana Archdiocese, including Bishop Apollinaris Baumgartner, Bishop Felixberto C. Flores, Archbishop Anthony S. Apuron, Monsignor Zoilo Camacho, now-deceased Father Antonio C. Cruz, and individuals named herein as DOE defendants, were aware of the sexual abuse committed by Petrie and deliberately remained quiet and

withheld such information from third parties including victim's parents or guardians and law enforcement authorities, in order to protect Petrie and the Agana Archdiocese, thereby placing their loyalty to the church above their duty to protect the minor children and their legal responsibilities.

24. At all times relevant hereto, Petrie sexually abused H.B.B. when H.B.B. was a minor and committed such acts while serving as a priest in the Talofofo Parish, in both of his capacities as an agent and employee of the Agana Archdiocese, and/or while working as a Capuchin, which are vicariously liable for his actions.

25. The Agana Archdiocese, the Capuchins, and DOES 1-50, inclusive, knew or should have known, that Petrie had sexually abused H.B.B. and rather than reporting the matter to law enforcement and without intervening so as to prevent Petrie from engaging in additional instances of sexual abuse, and without seeking to have Petrie acknowledge and take responsibility for his wrongful actions, they assisted Petrie with the specific purpose or design to keep Petrie's misconduct hidden and secret; to hinder or prevent Petrie's apprehension and prosecution; and to protect the Agana Archdiocese, as well as the Roman Catholic church and the Capuchins as international institutions. Such tactics included paying Brouillard a monthly stipend for many years up until his death, despite being inactive as a priest.

26. To this day, the Agana Archdiocese, the Capuchins, DOES 1-50 never contacted H.B.B., H.B.B.'s family, or children they know Petrie had sexual contact with. The Agana Archdiocese, the Capuchins, and DOES 1-50 have been content with the situation that any other children that were sexually abused by Petrie while he was serving as a priest, will remain affected by guilt, shame and emotional distress.

27. The criminal offense of Child Abuse is defined in 9 GCA § 31.30, which states in pertinent part as follows:

    a) A person is guilty of child abuse when:
       1) He subjects a child to cruel mistreatment; or

    2) Having a child in his care or custody or under his control, he:

        (B) subjects that child to cruel mistreatment; or
        (C) unreasonably causes or permits the physical or, emotional health of that child to be endangered

28. Under 19 GCA § 13101, the following relevant definitions are provided:

b) Abused or neglected child means a child whose physical or mental health or welfare is harmed or threatened with harm by the acts or omissions of the person(s) responsible for the child's welfare;

d) Child means a person under the age of 18 years;

t) Harm to a child's physical health or welfare occurs in a case where there exists evidence of injury, including but not limited to:

(2) Any case where the child has been the victim of a sexual offense as defined in the Criminal and Correctional Code; or

(3) Any case where there exists injury to the psychological capacity of a child such as failure to thrive, extreme mental distress, or gross emotional or verbal degradation as is evidenced by an observable and substantial impairment in the child's ability to function within a normal range of performance with due regard to the child's culture(.)

29. Under 9 GCA § 25A201, "sexual conduct" with a minor is defined as follows:

(o) Sexual Conduct means acts of sexual penetration, sexual contact, masturbation, bestiality, deviate sexual intercourse, sadomasochistic abuse, or lascivious exhibition of the genital or public area of a minor.

30. Under 9 GCA § 25.10(8), "sexual contact" is defined as follows:

(8) Sexual Contact includes the intentional touching of a victim's or actor's intimate parts of the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification.

31. Under 9 GCA § 28.65, the crime of Indecent Exposure is set forth in pertinent part as follows:

> (a) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:
>
> (1) that other person is under fourteen (14) years of age;
>
> (2) that other person is at least fourteen (14) but less than sixteen (16) years of age and the actor is a member of the same household as the victim, or is related by blood of affinity to the fourth degree to the victim, or is in a position of authority over the victim and the actor used this authority to coerce the victim to submit.

32. Under 9 GCA § 28.65, the crime of Indecent Exposure is set forth in pertinent part as follows:

> A person is guilty of indecent exposure if he exposes his genitals or performs any other lewd act under circumstances in which his conduct is likely to be observed by any person who would be offended or alarmed.

33. Under 19 GCA § 13201(b), the following are required to report child abuse:

> (b) Persons required to report suspected child abuse under Subsection (a) include, but are not limited to, ... clergy member of any religious faith, or other similar functionary or employee of any church, place of worship, or other religious organization whose primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, ...

### IV. FIRST CAUSE OF ACTION

**Child Sexual Abuse [Against Defendants the Capuchins, and DOES 1-50]**

34. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35. Defendants the Capuchins, and DOES 1-50 (collectively "Defendants" as alleged in this cause of action) are vicariously liable for the sexual abuse committed upon H.B.B. by Petrie. Public policy dictates that Defendants should be held responsible for Petrie's wrongful conduct under the theory commonly referred to as *Respondeat Superior*.

36. For the reasons set forth in the incorporated paragraphs of this Complaint, the sexual abuse of H.B.B. arose from and was incidental to Petrie's employment with, or service on behalf of the Agana Archdiocese, and the Capuchins, and while Petrie was acting within the scope of his employment with the Agana Archdiocese and service on behalf of the Capuchins, at the time he committed the act of sexual abuse, which were foreseeable to Defendants.

37. Defendants, on information and belief, ratified and/or approved of Petrie's sexual abuse by failing to adequately investigate, discharge, discipline and/or supervise Petrie and other priests, employees, servants, officers, volunteers, and/or agents known by Defendants to have sexually abused children, or to have been accused of sexually abusing children; by concealing evidence of Petrie's sexual abuse both as a priest and as a Capuchin; failing to intervene to prevent ongoing and/or further sexual abuse; by failing to report the sexual abuse as required under 19 GCA § 13201(b); by allowing Petrie for decades to continue in service as a Catholic priest working for the Agana Archdiocese and as a Capuchin.

38. Despite the pretense of policies and procedures to investigate and address instances of child sexual abuse by priests working for the Agana Archdiocese, the Capuchins, as well as their employees, servants, officers, volunteers, and/or agents. Defendants, on information and belief, implemented such policies and procedures for the purpose of avoiding scandal, to maintain secrecy and to preserve loyalty to fellow clergy of the Agana Archdiocese, as well as their employees, servants, officers volunteers, and/or agents, including child molesting clergy working for the

Agana Archdiocese, and serving as Capuchins, rather than the protection of children. Such hypocritical conduct by Defendants has served to systematically encourage, perpetuate and promote sexually abusive conduct by priests both in their role as clergy for the Agana Archdiocese, and as Capuchins.

39. The Agana Archdiocese, and the Capuchins either had actual knowledge of Petrie's sexual abuse of other minors whom Petrie likely victimized, or could have, or should have, reasonably foreseen that Petrie was committing and would commit sexual abuse of other minors.

40. As a direct and proximate result of the Defendants' above – described conduct, H.B.B. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

41. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling H.B.B. to exemplary and punitive damages.

## V. SECOND CAUSE OF ACTION

### Negligence [Against All Defendants]

42. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43. Defendants the Capuchins and DOES 1-50 (collectively "Defendants" as alleged in this cause of action) had a duty to protect H.B.B. when she was entrusted to Petrie's care by H.B.B.'s parents. H.B.B.'s care, welfare, and/or physical custody were temporarily entrusted to Defendants, and Defendants accepted the entrusted care of H.B.B. As such, Defendants owed to H.B.B., as a child at the time, a special duty of care, in addition to a duty of ordinary care, and owed to H.B.B. the higher duty of care that adults dealings with children owe to protect them from harm.

44. By virtue of this unique authority and position as a Roman Catholic priest and/or a Capuchin, on information and belief, Petrie was able to identify vulnerable victims and their families upon which he could perform such sexual abuse; to manipulate his authority to procure compliance with his sexual demands from his victims; to induce the victims to continue to allow the abuse; and to coerce them not to report it to any other persons or authorities. As a priest and as a Capuchin, Petrie had unique access to a position of authority within Roman Catholic families and/or families, like the family of H.B.B. such access, authority and reverence was known to the Defendants and encouraged by them.

45. Defendants, by and through their agents, servants and employees, knew or reasonably should have known, of Petrie's sexually abusive and exploitative propensities and/or that Petrie was an unfit agent. If was foreseeable that if Defendants did not adequately exercise or provide the duty of care owed to children in their care, including but not limited to H.B.B., the children entrusted to Defendants' care would be vulnerable to sexual abuse by Petrie.

46. Defendants breached their duty of care to the minor H.B.B. by allowing Petrie to come into contact with H.B.B. as a child without supervision; by failing to adequately supervise, or negligently retaining Petrie whom they permitted and enabled to have access to H.B.B.; by failing to properly investigate; by failing to inform, or concealing from H.B.B.'s parents, guardians, or law enforcement officials that Petrie was or may have been sexually abusing minors; by holding out Petrie to H.B.B.'s parents or guardians, and to the community of Guam at large, as being in good standing and trustworthy as a person of stature and integrity. Defendants cloaked within the façade of normalcy Petrie's contact with H.B.B. and/or with other minors who were victims of Petrie, and deliberately concealed and disguised the sexual abuse committed by Petrie.

47. As a direct and proximate result of the Defendants' above-described conduct, H.B.B. has suffered, and continues to suffer, great pain or mind and body, shock, emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

48. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling H.B.B. to exemplary and punitive damages.

## VI. THIRD CAUSE OF ACTION

### Negligent Supervision
### [Against Defendants the Capuchins, and DOES 1-50]

49. Plaintiff re-alleges and incorporates by reference pages 1 through 48 of this Complaint as if fully set forth herein.

50. Defendants the Capuchins and DOES 1-50 (collectively "Defendants" as alleged in this cause of action) had a duty to provide reasonable supervision of both Petrie and the minor child, H.B.B.; to use reasonable care in investigating Petrie; and to provide adequate warning to H.B.B.'s family, and to families of other children who were entrusted to Petrie, of Petrie's sexually abusive and exploitative propensities and unfitness.

51. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Petrie's sexually abusive and exploitative propensities and/or that Petrie was an unfit agent. Despite such knowledge, Defendants negligently failed to supervise Petrie in his position of trust and authority as a parish priest and/or scoutmaster, where he was able to commit the wrongful acts against H.B.B. alleged herein. Defendants failed to provide reasonable supervision of Petrie, failed to use reasonable care in investigating Petrie, and failed to provide adequate warning to H.B.B.'s family regarding Petrie's sexually abusive and

exploitative propensities and unfitness. Defendants further failed to take reasonable measures to prevent future sexual abuse.

52. As a direct and proximate result of the Defendants' above – described conduct, H.B.B. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

53. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling H.B.B. to exemplary and punitive damages.

## VII. FOURTH CAUSE OF ACTION

### Negligent Hiring and Retention
### [Against Defendants the Capuchins and DOES 1-50]

54. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55. Defendants the Capuchins and DOES 1-50 (collectively "Defendants" as alleged in this cause of action) had a duty not to hire, retain, or engage the services of Petrie in light of his sexually abusive and exploitative propensities.

56. Defendants, by and through their agents, servants and employees knew, or reasonably should have known, of Petrie's sexually abusive and exploitative propensities and/or that Petrie was an unfit agent. Despite such knowledge and/or opportunity to learn of Petrie's misconduct, Defendants negligently hired, retained, or engaged the services of Petrie in his position of trust and authority as a parish priest, where he was able to commit the wrongful acts against H.B.B. alleged herein. Defendants failed to properly evaluate Petrie in advance by failing to conduct necessary screening; failed to properly evaluate Petrie's conduct and performance as an employee of, or provider of services to the Defendants; and failed to exercise the due diligence incumbent upon employers to investigate employee misconduct, or to take appropriate disciplinary action, including immediate termination and reporting and referral of

Petrie's sexual abuse to appropriate authorities. Defendants negligently continued to retain Petrie in his service as a Catholic priest and Capuchin, working or providing services for Defendants, which enabled him to continue engaging in the sexually abusive and predatory behavior described herein.

57. As a direct and proximate result of the Defendants' above – described conduct, H.B.B. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

58. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling H.B.B. to exemplary and punitive damages.

## VIII. FIFTH CAUSE OF ACTION

### Breach of Fiduciary Duty And/Or Confidential Relationship
### [Against All Defendants]

59. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60. By holding Petrie out as a qualified priest and a person of stature and integrity within the Catholic Archdiocese, Defendants the Capuchins and DOES 1-50, together with Petrie himself, invited, counseled, encouraged and induced the Catholic community of Guam, including parents or guardians of children, and particularly parents or guardians of children serving to clean the churches and the rooms of the priests, to have trust and confidence in the Agana Archdiocese and its priests and to entrust their children to the company of priests and specifically to Petrie, including allowing their children to be alone with Petrie without supervision. Defendants collectively created and entered into a fiduciary and/or confidential relationship with its parishioners, including Catholic parents or guardians and their children, and in particular, children who provided services to the Agana Archdiocese that included serving to clean the churches and the homes of the priests. Accordingly, Defendants

collectively created and entered into a fiduciary and/or confidential relationship specifically with the minor child H.B.B.

61. Through such fiduciary and/or confidential relationship, Defendants collectively caused parents or guardians to entrust their children to members of the Agana Archdiocese, serving both in their role as a priest and a Capuchin, and specifically entrusted their children to Petrie, including the parents of H.B.B., which resulted in H.B.B. serving to clean Petrie's house, resulting in the subject acts of sexual abuse described herein.

62. Defendants collectively breached their fiduciary and/or confidential relationship with the minor child H.B.B. by violating the trust and confidence placed in them by parishioners and/or members, and specifically by the minor child H.B.B., and by engaging in the wrongful acts described in this Complaint.

63. As a direct and proximate result of the Defendants' above – described conduct, H.B.B. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

64. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling H.B.B. to exemplary and punitive damages.

## IX. REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff H.B.B. requests judgment against all Defendants, both jointly and severally, on all counts as follows:

1. For all general, special, exemplary and punitive damages, as allowed by law in a sum to be proven at trial and in an amount not less than $5,000,000.00;
2. For costs and fees incurred herein;
3. Attorneys' fees, as permitted by law; and
4. For other such and further relief as the Court may deem just and proper.

## X. DEMAND FOR JURY TRIAL

Plaintiff H.B.B., through his undersigned counsel, hereby demands a jury trial of six (6) be sought to hear the above-entitled and enumerated action.

Respectfully submitted this 10 day of December, 2019.

BERMAN O'CONNOR & MANN

By: /s/ Michael J. Berman

MICHAEL J. BERMAN, ESQ.

## VERIFICATION

H.B.B. declares and states that he is the PLAINTIFF in the foregoing COMPLAINT; that she has read said VERIFIED COMPLAINT FOR DAMAGES and knows the contents thereof to be true and correct, except as to the matters which may have been stated upon her information and belief; and as to those matters, she believes them to be true.

I declare, under penalty of perjury, this __10__ day of December, 2019, that the foregoing is true and correct to the best of my knowledge.

_H. B. B._
H.B.B.

SUBSCRIBED and SWORN to before me, a notary public in and for Guam, this __16th__ day of December, 2019, by **H.B.B.**

_____
NOTARY PUBLIC

JENNIFER BANAYAT QUITUGUA
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: APRIL 20, 2021
P.O. Box 5580, Hagatna, Guam 96932